1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

JOE PATRICK FLARITY,

CASE NO. C20-5219RBL

9

Plaintiff,

ORDER

10

v.

11

STATE OF WASHINGTON,

12

Defendant.

13

14      THIS MATTER is before the Court on Defendants' Motions to Dismiss [Dkt. #s 33 and

15 43]; Plaintiff Flarity's "Miscellaneous" Motion (which is a motion to disqualify counsel and to

16 stay the case) [Dkt. # 51]; Flarity's Motion for Reconsideration [Dkt. # 53] of the Court's Order

17 [Dkt. # 47] Denying his Motion for Default; and Flarity's Motion for Reconsideration [Dkt. #

18 54] of the Court's Order Denying his Motion to Change Venue to Portland.

19      Flarity sued the State and Pierce County for what appear to be two different incidents.

20 First, the Washington State Department of Transportation apparently closed a bridge near his

21 Pierce County home, re-routed traffic, and made his commute longer. While on the alternate

22 route, Flarity was ticketed for speeding (17 mph over, in a 25 mph zone). Flarity fought the

23 ticket, claiming it did not have constitutionally-required language on the back and thus violated

24

his constitutional right to due process. He lost in Pierce County District Court, appealed to the Pierce County Superior Court, and lost again. He apparently did not appeal further, choosing instead to file this federal action.

Flarity claims the speeding ticket itself and the underlying state court proceedings violated his constitutional rights. These claims are aimed at both Pierce County and the State (and 99 "Doe" state actors, including the judge(s)). As the State points out, Flarity admits he made the same arguments in state court that he makes here.

Flarity also claims that WSDOT violated his constitutional right to travel by closing an 82-year old bridge near his home, for safety reasons.

The State argues that Flarity's "ticket" claims are barred by the *Rooker-Feldman* Doctrine, depriving this Court of subject matter jurisdiction over his claim. It argues that it is entitled to Eleventh Amendment immunity, the state court judges are entitled to absolute judicial immunity, Flarity's right to travel is not implicated by a bridge closure, and that all individual defendants are entitled to qualified immunity in any event.

Pierce County's arguments are similar, but adds (and demonstrates) that Flarity *still* has not properly served it under the Federal Rules of Civil Procedure. It seeks dismissal on the additional bases of lack of service and lack of personal jurisdiction.

**A. Flarity's Speeding Ticket claims.**

Both Defendants argue that Flarity's "speeding ticket" claims are fatally flawed.

Flarity's Response to the State's motion cites and purports to quote lots of cases and other authorities (most unrelated to the issues here), but he does not address the substance of the State's arguments. He seems to suggest that *Iqbal* was wrongly decided, and asks that he not get "*Iqballed*."

Flarity elected not to respond County's motion, at all, despite having ample time to do so. Indeed, since the County filed its motion, Flarity has filed no less than *13* different motions, documents, notices and supplements. [*See* Dkt. #s 48, 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 63, 64, and 67]. And he did so in the face of this Court's not-subtle encouragement to respond to the motion on the merits [Dkt. # 47 at 2].

Instead, Flarity asks the Court to Strike the County's Motion, Stay the case, and Disqualify its attorneys. As to the latter, he explains:

Motion[1]. Prosecutors are possible named defendants or witness[2], and their representation also violates the Canon of "the appearance of impropriety."[3] Furthermore, a conflict of Vicarious Disqualification by the **Laskey Doctrine**[4]: "*lawyers in the same firm have strong professional, pecuniary and personal reasons for talking to each other about cases.*" Disqualification is not a problem because defendants have an expansive list of available attorneys eager to defend them at taxpayer expense. See cases *Ames v. Pierce County 374 P.3d 228 (2016) and Nissen v. Pierce County 182 Wash.2d 1008, 343 P.3d 759 (2015).*

Although Plaintiff is forced to correspond with prosecutors by Court Order, the potential for harm to plaintiff is very high. Discoverable records of violations of the law and conspiracy to violate rights are vulnerable to the Absolute Immunity enjoyed by Prosecutors in the courts and further shielding by the WSBA (See plaintiff's Notice 7 DK#39).

[Dkt. # 51 at 2].

This is nonsense. Flarity has offered no facts or law, and no persuasive argument supporting attorney disqualification or any further delays in this case. He has not addressed any of Pierce County's cogent and on-point arguments and authorities opposing his motion. [Dkt. # 60]. Flarity's Oral Miscellaneous Motion to strike, stay, and disqualify [Dkt. # 51] is frivolous and it is **DENIED**.

Under Local Rule 7(b)(2), a party's failure to respond to a motion to dismiss may be deemed by the court an admission that the motion has merit:

> (2) *Obligation of Opponent*. Each party opposing the motion shall, within the time prescribed in LCR 7(d), file with the clerk, and serve on each party that has appeared in the action, a brief in opposition to the motion, together with any supporting material of the type described in subsection (1). Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.

Pierce County's Motion to Dismiss does have merit, and Flarity's intentional failure to respond in any fashion to it is deemed an admission of the same.  For that reason, and for the reasons outlined in the motion itself (and in the State's Motion, discussed below), Pierce County's Motion to Dismiss is **GRANTED** and all of Flarity's claims against it are **DISMISSED** with prejudice, and without leave to amend.

***

Defendant Washington argues that this Court does not have subject matter jurisdiction over Flarity's *de facto* appeal of the adverse speeding ticket judgments.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Generally, the court must accept as true all well-pleaded allegations of material fact and draw all reasonable inferences in favor of

the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir. 1998).

"A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute." *United Transp. Union v. Burlington N. Santa Fe R. Co.*, No. C06-5441 RBL, 2007 WL 26761, at *2 (W.D. Wash. Jan. 2, 2007), *aff'd*, 528 F.3d 674 (9th Cir. 2008). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989).

This Court cannot and will not review or reverse decisions made in state court. The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S. Ct. 1517, 1521, 161 L. Ed. 2d 454 (2005). [W]hen a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden *de facto* appeal. *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003); *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2008).

1    Flarity's "ticket" claims[1] are a *de facto* appeal of the case he lost in District Court and

2    again in Superior Court. He asks the Court to undo those judgments. It cannot and will not do so.

3    It does not have subject matter over his core claim, and that claim is **DISMISSED**.

4    Defendants also argue that Flarity has failed to state a claim upon which relief can be

5    granted. Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable

6    legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

7    *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

8    facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

9    678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

10   content that allows the court to draw the reasonable inference that the defendant is liable for the

11   misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts,

12   conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

13   12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

14   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation

15   to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

16   and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

17   must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

18   550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead

19   "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at

20   678 (citing *id.*).

21   On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

22   amend the pleading was made, unless it determines that the pleading could not possibly be cured

23

24   ---
[1] The un-appealed superior court judgment is final, and it also entitled to preclusive effect.

by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

The Eleventh Amendment generally gives states and state agencies the power to assert sovereign immunity in federal court as a bar to claims for money damages brought against them by private parties. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). A federal court may entertain a suit against a state only if: (1) the state has waived its Eleventh Amendment immunity, *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 778-79 (1991); (2) Congress has abrogated states' immunity, *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989); or (3) the United States is the plaintiff, *United States v. Mississippi*, 380 U.S. 128, 140 (1965).

The State argues that it has not waived its Eleventh Amendment immunity and Flarity does not claim or demonstrate that it has. He does not meaningfully address the argument, instead claiming "there is *Monell* Liability." The State is immune from this suit as a matter of law, and Flarity's claims against it are **DISMISSED** on this basis as well.

Finally, Flarity appears to assert claims against the state court judges and their staffs, though he has not named or served any individual defendants. (It is apparent that he knows the names of many of them; he discusses them in his complaint). Nevertheless, the judicial officers and employees he seeks to sue have absolute immunity from his claims.

Any judicial act a judge carries out entitles the judge to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Mireles v. Waco*, 502 U.S. 9 (1991). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of

1    damages." *Id.* at 11. *See also Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (judicial

2    immunity extends to declaratory and other equitable relief), *superseded by statute on other*

3    *grounds*. Judicial immunity extends to judges and "certain others who perform functions closely

4    associated with the judicial process," including clerks and commissioners. *Moore*, 96 F.3d at

5    1245 (quoting *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988)). *See also Mullis v. U.S. Bankr.*

6    *Court for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987) (immunities available to judges

7    also apply to court staff "when they perform tasks that are an integral part of the judicial

8    process," unless they act in the "clear absence of all jurisdiction").

9        This immunity cannot be overcome by allegations of legal error, bad faith, or malice. *Id.*

10   at 1245; *Stump*, *supra*., at 1101. Rather, judicial or quasi-judicial immunity may only be

11   overcome when a judicial officer acts outside his or her judicial capacity or in the complete

12   absence of all jurisdiction. *Moore*, 96 F.3d at 1245.

13       All Flarity's claims against any state or county judge or judicial employee arising out of

14   his speeding ticket litigation are therefore **DISMISSED**. Because there are no additional or

15   different facts that he could plead to overcome this legal conclusion, the dismissal is with

16   prejudice and without leave to amend. As the State succinctly put it: "Flarity's flawed theory of

17   liability does not state a cognizable legal claim and no amount of amendment can cure that

18   deficiency."

19   **B.  Flarity's Right to Travel Claim.**

20       Flarity also claims that WSDOT and its employees violated his constitutional right to

21   travel by closing a bridge near his home for safety reasons, and re-routing traffic. This claim is

22   utterly, facially frivolous.

23       While the right *to* travel is undeniably a fundamental one, there are no constitutional

24   guarantees about the *route* upon which one may travel, any more than there are constitutional

1    guarantees about traffic conditions, or access to a private jet to make the journey more pleasant.

2    This District would be overwhelmed in litigation, and the state would be bankrupt, if every

3    person slightly inconvenienced by the West Seattle Bridge[2] closure had a plausible constitutional

4    claim for money damages against WSDOT.

5           There is no authority anywhere—certainly not in Flarity's complaint or Response or

6    countless other filings—supporting a plausible claim based on the undisputed facts here. Nobody

7    owes Mr. Flarity a bridge, as a matter of substantive law, and as a matter of common sense. The

8    State's Motion to Dismiss this claim is **GRANTED**, and it is **DISMISSED** with prejudice and

9    without leave to amend.

10          Flarity's remaining motions [Dkt. #s 53 and 54] are **DENIED** as unpersuasive, frivolous,

11   and moot.

12          This matter is closed.

13          IT IS SO ORDERED.

14          Dated this 24th day of July, 2020.

15

16                                                        Ronald B. Leighton
                                                          United States District Judge
17

18

19

20

21

22

23   ---
     [2] Or the Narrows Bridge, or the Hood Canal Bridge, or the I-90 Bridge, or the Skagit River Bridge, or any other
     fallen or failing bridge.
24

ORDER - 9